IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

| | | |
|---|---|---|
| **JAMES C. SMITH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **CIVIL ACTION NO. 5:07-00794** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

This is an action seeking review of the decision of the Commissioner of Social Security denying Plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 40 - 433, 1381-1383f. This case is presently pending before the Court on the Plaintiff's Motion for Summary Judgment (Document No. 13.) and Defendant's Motion for Judgment on the Pleadings. (Document No. 14.) Both parties have consented in writing to a decision by the United States Magistrate Judge. (Document Nos. 4 and 5.)

The Plaintiff, James C. Smith (hereinafter referred to as "Claimant"), filed applications for DIB and SSI on October 19, 2005 (protective filing date),[1] alleging disability as of December 1,

---

[1] Claimant filed previous applications for DIB and SSI on November 12, 1998. (Tr. at 12.) The claims were denied on May 25, 1999, and Claimant did not appeal the determinations. (*Id.*) Claimant protectively filed further applications for DIB and SSI on January 9, 2001, alleging disability as of December 22, 2000. (Tr. at 12, 85-87, 101.) The claims were denied initially on July 6, 2001, and Claimant did not appeal the determinations. (Tr. at 12, 53-55.) The record appears that Claimant also filed applications for disability benefits in 1980 and 1987, which were denied. (Tr. at 67.)

2000, due to lower back problems and a heart attack.[2] (Tr. at 12, 78-81, 127, 131-32.) The claims were denied initially and upon reconsideration. (Tr. at 43-45, 48-50.) On July 19, 2006, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 39.) The hearing was held on January 18, 2007, before the Honorable James P. Toschi. (Tr. at 441-55.) By decision dated February 21, 2007, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 12-23.) The ALJ's decision became the final decision of the Commissioner on November 8, 2007, when the Appeals Council denied Claimant's request for review. (Tr. at 5-7.) On December 7, 2007, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Document No. 2.)

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of

---

[2] In explaining how his illnesses, injuries, or conditions limited his ability to work, Claimant stated as follows:

> I can't walk more than 30-40 feet, before I have to stop. I can't afford medications to treat my heart condition. I don't have any insurance. I can't lift over a couple of pounds without pain in my back. My back causes constant pain that shoots down my left leg. I can't sit or stand for over 15 minutes, before I begin to be in pain. I use a cane sometimes to help me walk.

(Tr. at 132.) On his form Disability Report - Appeal, Claimant alleged the additional disabling impairments: severe depression, increased back pain and weakness, and shortness of breath resulting from his heart condition. (Tr. at 159.)

disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2007). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2007). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since the alleged onset date, December 1, 2000. (Tr. at 14, Finding No. 2.) Under the second inquiry, the ALJ found that Claimant suffered from chronic lumbosacral strain with status post two lumbar surgeries, left-side sciatica, status post

myocardial infarction with angioplasty and stent placement, coronary artery disease, and status post surgical repair of Achilles tendon repair on the left side, which were severe impairments. (Tr. at 14, Finding No. 3.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 17, Finding No. 4.) The ALJ then found that Claimant had a residual functional capacity for work at the light level of exertion, with the following limitations:

> [T]he claimant has the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently. He can stand and/or walk about six hours and sit about six hours during an eight-hour workday. He can never balance or climb ladders, ropes or scaffolds. He can occasionally climb stairs and ramps, stoop, kneel, crouch and crawl. He can occasionally lift above shoulder level, approximately two hours per day. He must avoid even moderate exposure to extreme heat and extreme cold. Also, he must avoid concentrated exposure to vibration and hazards, such as machinery and heights.

(Tr. at 18, Finding No. 5.) At step four, the ALJ found that Claimant could not return to his past relevant work. (Tr. at 22, Finding No. 6.) On the basis of testimony of a Vocational Expert ("VE") taken at the administrative hearing, the ALJ concluded that Claimant could perform jobs such as a cashier, counter attendant, and security worker, at the light exertional level. (Tr. at 22, Finding No. 10.) On this basis, benefits were denied. (Tr. at 23, Finding No. 11.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on July 8, 1959, and was 47 years old at the time of the administrative hearing, January 18, 2007. (Tr. at 22, 78, 444.) Claimant had a ninth grade, or limited, education and was able to communicate in English. (Tr. at 22, 136, 445.) In the past, he worked as a laborer/cable installer. (Tr. at 22, 132-33, 138-39, 451.)

The Medical Record

The Court has reviewed all the evidence of record, including the medical evidence, and will discuss it below in relation to Claimant's arguments.

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in (1) assessing Claimant's pain and credibility, (3) relying upon only part of the evidence of record, and (3) failing to consider the combination of Claimant's impairments. (Document No. 13 at 11-13.) The Commissioner asserts that Claimant's arguments are without merit and that substantial evidence supports the ALJ's decision. (Document No. 14 at 8-11.)

1. <u>Pain and Credibility</u>.

Claimant first alleges that the substantial evidence of record supports his complaints of back and knee pain, which renders him disabled. (Document No. 13 at 12-14.) The ALJ however, Claimant asserts, found him only partially credible because "he has no insurance and could not afford the medical treatment that he so desperately needs." (<u>Id.</u> at 13.) Claimant further asserts:

> The ALJ's support for his credibility findings doesn't make sense. He seemed to want to penalize the plaintiff for being poor and not being able to get the treatment that he needs because he doesn't have any money and doesn't have a medical card. Surely, justice requires greater support than this in order [for] a plaintiff who is desperately disabled [to receive] his benefits.

(<u>Id.</u>)

The Commissioner asserts that in assessing Claimant's pain and credibility, "the ALJ complied with the controlling regulations and Fourth Circuit precedent and supported his finding with substantial evidence." (Document No. 14 at 8-9.) The Commissioner asserts that the ALJ properly rejected Claimant's statements based in part on inconsistencies in the record, because he received only conservative treatment without intensification of treatment modalities, and because he remained active. (<u>Id.</u> at 9-10.)

A two-step process is used to determine whether a claimant is disabled by pain or other symptoms. First, objective medical evidence must show the existence of a medical impairment that reasonably could be expected to produce the pain or symptoms alleged. 20 C.F.R. §§ 404.1529(b) and 416.929(b) (2007); SSR 96-7p; <u>See also</u>, <u>Craig v. Chater</u>, 76 F.3d 585, 594 (4th Cir. 1996). If such an impairment is established, then the intensity and persistence of the pain or symptoms and the extent to which they affect a claimant's ability to work must be evaluated. <u>Id.</u> at 595. When a claimant proves the existence of a medical condition that could cause the alleged pain or symptoms,

"the claimant's subjective complaints [of pain] must be considered by the Secretary, and these complaints may not be rejected merely because the severity of pain cannot be proved by objective medical evidence." Mickles v. Shalala, 29 F.3d 918, 919 (4th Cir. 1994). Objective medical evidence of pain should be gathered and considered, but the absence of such evidence is not determinative. Hyatt v. Sullivan, 899 F.2d 329, 337 (4th Cir. 1990). A claimant's symptoms, including pain, are considered to diminish her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4) (2007). Additionally, the Regulations provide that:

> [we will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating, examining, or consulting physician or psychologist, and observations by our employees and other persons. . . . Factors relevant to your symptoms, such as pain, which we will consider include:
>
> (i) Your daily activities;
>
> (ii) The location, duration, frequency, and intensity of your pain or other symptoms.
>
> (iii) Precipitating and aggravating factors;
>
> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
>
> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
>
> (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 or 20 minutes every hour, sleeping on a board, etc.); and
>
> (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) (2007).

SSR 96-7p repeats the two-step regulatory provisions:

First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the individual's pain or other symptoms. * * * If there is no medically determinable physical or mental impairment(s), or if there is a medically determinable physical or mental impairment(s) but the impairment(s) could not reasonably be expected to produce the individual's pain or other symptoms, the symptoms cannot be found to affect the individual's ability to do basic work activities.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

SSR 96-7p, 1996 WL 374186 (July 2, 1996). SSR 96-7p specifically requires consideration of the "type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms" in assessing the credibility of an individual's statements. Significantly, SSR 96-7p requires the adjudicator to engage in the credibility assessment as early as step two in the sequential analysis; i.e., the ALJ must consider the impact of the symptoms on a claimant's ability to function along with the objective medical and other evidence in determining whether the claimant's impairment is "severe" within the meaning of the Regulations. A "severe" impairment is one which significantly limits the physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c) and 416.920(c).

Craig and SSR 96-7p provide that although an ALJ may look for objective medical evidence of an underlying impairment capable of causing the type of pain alleged, the ALJ is not to reject a

claimant's allegations solely because there is no objective medical evidence of the pain itself. Craig, 76 F.3d at 585, 594; SSR 96-7p ("the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record"). For example, the allegations of a person who has a condition capable of causing pain may not be rejected simply because there is no evidence of "reduced joint motion, muscle spasms, deteriorating tissues [or] redness" to corroborate the extent of the pain. Id. at 595. Nevertheless, Craig does not prevent an ALJ from considering the lack of objective evidence of the pain or the lack of other corroborating evidence as factors in his decision. The only analysis which Craig prohibits is one in which the ALJ rejects allegations of pain solely because the pain itself is not supported by objective medical evidence.

The ALJ noted the requirements of the applicable law and Regulations with regard to assessing pain, symptoms and credibility. (Tr. at 18-19.) The ALJ found, at the first step of the analysis, that resolving doubts in Claimant's favor, Claimant "has produced evidence of impairments that could reasonably be expected to cause the type of pain he alleges." (Tr. at 20.) Thus, the ALJ made an adequate threshold finding and proceeded to consider the intensity and persistence of Claimant's alleged symptoms and the extent to which they affected Claimant's ability to work. (Tr. at 19-21.) At the second step of the analysis, the ALJ concluded that Claimant's "complaints suggest a greater severity of impairment than can be shown by the objective medical evidence alone." (Tr. at 20.)

In view of all the evidence of record, it is clear that the ALJ properly considered the factors under 20 C.F.R. § 404.1529(c)(4) and 416.929(c)(4), in finding Claimant not entirely credible. The ALJ summarized Claimant's testimony in his decision, acknowledging Claimant's complaints of

lower back, chest/heart, neck, shoulder, knee, and heel pain, as well as complaints of shortness of breath, weakness, and problems with his nerves, being around people, and difficulty spelling. (Tr. at 19.) The ALJ thus noted the nature and location of Claimant's impairments. The ALJ further noted that Claimant's lower back pain was aching, stabbing, burning, stinging, cramping, throbbing, and radiating in nature, and was constant in duration. (Id.) The ALJ noted that Claimant's back pain was made worse with standing, sitting, stooping, climbing, and walking, and nothing stopped the pain. (Id.) Likewise, the ALJ noted that Claimant's chest/heart pain was burning, throbbing, and crushing in nature; was associated with dizziness, shortness of breath, fatigue, and irritability; occurred two times per week, lasting three to four hours at a time; and was worsened with stress or any physical activity. (Id.) Bed rest helped relieve the chest/heart pain. (Id.) The ALJ further noted that Claimant's heel pain was aching, stabbing, burning, throbbing, and sharp radiating in nature; was constant in duration and worsened with walking, climbing, and standing; and was relieved with sitting or lying down. (Id.) Regarding treatment, the ALJ noted that Claimant was treated conservatively "without intensification of treatment modalities" and without evidence of side effects from his medications. (Tr. at 20.)

The ALJ also summarized Claimant's reported activities of daily living, which included caring for his personal needs, watching television, and performing all basic living duties without assistance. (Tr. at 17.) On a form Function Report, dated March 10, 2006, Claimant reported that he watched television, prepared simple meals, kept his house as clean as possible with the assistance of his neighbors, sat on the porch, paid bills once a month and counted change, and was able to manage a savings account and use a checkbook and money orders. (Tr. at 180-87.)

In finding Claimant partially credible, the ALJ determined that the record contained several

inconsistencies. (Tr. at 19.) First, although Claimant alleged an onset of disability of December 1, 2000, medical records from Charleston Area Medical Center demonstrate that Claimant injured his left knee when working on a car and fell from the height of the hood. (Tr. at 19, 290.) Claimant also reported to Lester Sargent, M.A., on consultative mental status examination, that he was able to perform all basic living duties without assistance. (Tr. at 19, 409.) Furthermore, the medical records from Montgomery General Hospital demonstrate that Claimant injured his back in April, 2005, while carrying a washer. (Tr. at 19, 304.) As the Commissioner points out, Claimant also was arrested in 2002 for cultivating marijuana. (Tr. at 407.) These activities, combined with Claimant's aforementioned activities, substantially support the ALJ's finding that Claimant was not entirely credible.

Second, the ALJ found that Claimant's conservative treatment without intensification of treatment modalities failed to support Claimant's complaints of disabling pain and other symptoms. (Tr. at 20.) The Commissioner points out that between July 6, 2001, the date of the previous ALJ decision, and February 21, 2007, the date of the current ALJ's decision, Claimant sought medical assistance on only five occasions. (Document No. 14 at 10.)

Claimant correctly points out that an ALJ may not draw inferences regarding the seriousness of his medical condition based on his financial inability to obtain necessary treatment. The Commissioner may not deny a claimant benefits on the basis of a failure to seek treatment due to a lack of funds. See Mickles v. Shalala, 29 F.3d 918, 929-30 (4th Cir. 1994); Lovejoy v. Heckler, 790 F.2d 1114, 1117 (4th Cir. 1986). Social Security Ruling 96-7p provides that an ALJ "must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the

11

individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment."

Contrary to Claimant's allegations however, the ALJ did not deny Claimant benefits based on a lack of medical treatment. The ALJ simply found that during the relevant period of time, between July 6, 2001, and February 21, 2007, Claimant's treatment was conservative in nature, consisting of medications, injections, and some therapy. (Tr. at 20.) The ALJ further noted that treatment remained somewhat consistent and did not require "intensification of treatment modalities." (Id.) While Claimant underwent two lumbar laminectomies, two heart catheterizations, and surgical repair of his Achilles tendon tear on the left side, and experienced some pain, there is no indication that the underlying conditions or pain precluded all work. The ALJ adequately summarized the medical evidence of record in his decision. (Tr. at 15-17.) Furthermore, the record does not indicate that Claimant's physical condition reached the severity where he was required to seek further emergency treatment for which he was denied because he could not afford it, or that he sought other forms of medical treatment and was denied due to the lack of funds. Accordingly, the Court finds that any error that the ALJ may have committed in commenting on the lack of medical treatment in view of Claimant's financial status, was harmless. Accordingly, the Court finds that the ALJ properly considered Claimant's subjective allegations and that his pain and credibility assessment is supported by substantial evidence.

2. Combination of Impairments.

Claimant next alleges that the ALJ failed to consider the combination of Claimant's impairments and relied upon only part of the evidence of record. (Document No. 13 at 13-14.) Specifically, Claimant asserts as follows:

> The ALJ found that the plaintiff had chronic lumbosacral strain with status post two lumbar surgeries, left-side sciatica, status post myocardial infarction with angioplasty and stent placement, coronary artery disease and status post surgical repair of Achilles tendon repair on the left side. (TR 14) He failed to take into consideration how these impairments, together, would affect the plaintiff's ability to work. He just simply listed that he has these impairments and took nothing else into consideration as he is required to do. For these reasons the ALJ's decision is wrong.

(Tr. at 14.) The Commissioner asserts that Claimant's argument is without merit because the ALJ's hypothetical questioning of the Vocational Expert incorporated Claimant's limitations from all his impairments. (Document No. 14 at 11.) The Commissioner asserts that the hypothetical question "was exhaustive and more than accounted for [Claimant's] limitations from his back and heart impairments. (Tr. 451). The ALJ's hypothetical question was also consistent with someone who is capable of cultivating, buying, and using illegal substances and caring for a disabled brother (Tr. at 165, 407)." (Id.)

> The Social Security Regulations provide as follows:
>
> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.

20 C.F.R. §§ 404.1523; 416.923 (2007). When there is a combination of impairments, the issue "is not only the existence of the problems, but also the degree of their severity, and whether, together, they impaired the claimant's ability to engage in substantial gainful activity." Oppenheim v. Finch, 495 F.2d 396, 398 (4th Cir. 1974). The ailments should not be fractionalized and considered in isolation, but considered in combination to determine the impact on the ability of the claimant to engage in substantial gainful activity. Id. The cumulative or synergistic effect that the various impairments have on claimant's ability to work must be analyzed. DeLoatche v. Heckler, 715 F.2d

13

148, 150 (4th Cir. 1983.)

Claimant argues that the ALJ failed to consider the combined effects of his back, heart, and heel conditions. However, he fails to point to any specific portion of the record or any specific evidence demonstrating that the ALJ failed to consider the severity of her impairments in combination and "fractionalized" the impairments. The ALJ specifically noted the requirements of the Regulations with regard to considering impairments in combination. (Tr. at 13, 17.) The ALJ then discussed Claimant's impairments, finding that his chronic lumbosacral strain with status post two lumbar surgeries, left-side sciatica, status post myocardial infarction with angioplasty and stent placement, coronary artery disease, and status post surgical repair of Achilles tendon repair on the left side, were severe impairments. (Tr. at 14, Finding No. 3.) The ALJ specifically found, however, that the record did not reflect that Claimant had "an impairment of combination of impairments that meets or medically equals an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)." (Tr. at 17, Finding No. 4.) Further, the ALJ considered and accounted for Claimant's various impairments in determining Claimant's residual functional capacity, limiting him to light work with additional limitations that reflect his various impairments and symptoms. (Tr. at 18.) Additionally, the ALJ noted that he had considered all of the evidence of record in making his decision. (Tr. at 13, 18.) In his pain and credibility assessment, the ALJ discussed each of Claimant's impairments individually, but concluded that their combined effects were not disabling. (Tr. at 18-22.) Furthermore, the ALJ incorporated Claimant's limitations from all his impairments in his hypothetical questions to the VE. (Tr. at 451-52.)

Upon review of the evidence of record and the ALJ's decision, the Court finds that the ALJ's

consideration of Claimant's impairments is consistent with all applicable standards and Regulations, and his conclusions are supported by substantial evidence. Claimant's arguments therefore are without merit.

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, by Judgment Order entered this day, the Plaintiff's Motion for Summary Judgment (Document No. 13.) is **DENIED**, Defendant's Motion for Judgment on the Pleadings (Document No. 14.) is **GRANTED**, the final decision of the Commissioner is **AFFIRMED**, and this matter is **DISMISSED** from the docket of this Court.

The Clerk of this Court is directed to send a copy of this Memorandum Opinion to counsel of record.

ENTER: March 31, 2009.

R. Clarke VanDervort
United States Magistrate Judge